[S.F. No. 22825. In Bank. Dec. 27, 1971.]

A. L. SOLGAARD, Plaintiff and Respondent, v.
GUY F. ATKINSON COMPANY, Defendant and Appellant.

COUNSEL

William J. Connolly and Jay R. Mayhall for Defendant and Appellant.

Walkup, Downing, Sterns & Poore, D. Oliver Germino and William B. Boone for Plaintiff and Respondent.

## OPINION

**BURKE, J.**—Defendant, a building contractor appeals from a judgment entered by the Merced County Superior Court following a jury verdict in plaintiff's favor for $78,212 in a personal injury action. The principal issue involved in this case is the applicability of the so-called "rescue doctrine" to plaintiff, a medical doctor injured while attempting to reach and treat two of defendant's employees trapped in a landslide at a construction site. We have concluded that under the evidence in this case plaintiff was a

rescuer, entitled to the benefit of certain special rules applicable to such persons, and that the judgment in his favor should be affirmed.

Plaintiff was one of several doctors who had agreed to provide emergency medical care and treatment to employees injured during the course of building the Los Banos Creek Detention Dam. Defendant, general contractor for the Federal Bureau of Reclamation, was engaged in constructing an 88-foot long spillway to handle overflow from the dam. The spillway was to be built by ripping out a natural hill with earthmoving equipment, through layers of hard shale, down to the desired depth of approximately 50 feet. Since loss of moisture or weathering causes shale to crack and peel, one foot of earth was left in place above the shale until defendant was ready to pour the concrete foundation. Shale, when left moist, is quite slippery and has a tendency to part within itself on a plane; some evidence was introduced that a rainfall had recently occurred at the site of the accident.

The concrete foundation of the spillway was laid in 35-foot sections, each containing a "cut-off trench" approximately 30 inches deep, running at right angles to the spillway slope. These trenches help to anchor the concrete on the spillway; after each trench is dug, the final one-foot layer of earth is removed and the concrete poured. A month before the accident in question took place, a small slide had occurred during excavation of a cut-off trench; a chunk of material had fallen upon one of defendant's employees. As a result of this slide, the Bureau of Reclamation recommended that anchor bolts or bars be placed on the entire spillway slope, to prevent further slippage within the shale. Although one of defendant's employees had agreed with the bureau to install anchor bolts, this was never done.

On December 21, 1964, defendant's employees Thorne and Parsons were digging a cut-off trench on the bottom of the spillway when a mass of shale broke off of the slope and pinned them in the trench.[1] Defendant's representatives called plaintiff at his home and requested his aid. Plaintiff hurried to the site, and was escorted by one of defendant's employees to the scene of the accident. The injured men were located about 15 to 20 feet down a very steep incline, and about 10 to 15 feet out on the spillway floor. According to the evidence, and unknown to plaintiff, there were several alternative means of reaching these men, namely, a pathway used by defendant's personnel, step-like notches cut into the spillway bank, ropes anchored at the top of the slope, a ladder (eventually used to carry the injured men from the spillway floor), and finally, simply scrambling

---

[1] There was some evidence introduced that Parsons and Thorne were working by themselves, without supervision.

over the side of the steep embankment. Defendant's "safety man," Moles-worth, directed another employee to lead plaintiff over the side and down the slope; the route taken ran over the top of the steep embankment and was very "pebbly and gravely." Plaintiff kept slipping and sliding and, about half way down, he slipped and fell, injuring his back. Despite his injury, plaintiff continued down the embankment and treated the injured men, amputating Parsons' leg in order to extricate him from the rocks.

As noted above, the jury returned a verdict for plaintiff for $78,212 in his personal injury action against defendant. On appeal, defendant contends that the trial court committed prejudicial error in instructing the jury regarding the law applicable to plaintiff's theories of recovery.

Among other things, the jury was instructed that in order to recover plaintiff was required to prove that defendant was negligent and that such negligence was a proximate cause of plaintiff's injury. The instructions properly defined negligence and proximate cause in general terms and presented the jury with various bases for finding that defendant was negligent by finding (1) that defendant breached its duty of reasonable care to protect persons invited upon the premises to work or perform services in the construction area, (2) that defendant breached its statutory duty as an employer to furnish a safe place to work and to furnish, use and adopt safety devices, safeguards and practices (Lab. Code, §§ 6400-6401), or (3) that defendant breached its duty under certain safety orders (Nos. 1540 and 1546) setting forth certain specified duties of care to its employees.[2]

Defendant concedes that the court properly instructed the jury regarding defendant's duty of reasonable care to persons, such as plaintiff, who are invited upon the premises. Moreover, defendant agrees that plaintiff was entitled to have the jury instructed on those statutory provisions and safety orders which were enacted for the benefit and protection of persons in his position. (See *Vesely* v. *Sager,* 5 Cal.3d 153, 164 [95 Cal.Rptr. 623, 486 P.2d 151]; *Nunneley* v. *Edgar Hotel,* 36 Cal.2d 493, 497 [225 P.2d 497]; Evid. Code, § 669.) The instructions given on Labor Code sections 6400 and 6401 and safety order 1540, subdivision (i) (requiring an employer to furnish a safe means for workmen to enter and leave the evacu-

---

[2]The court read to the jury the text of the foregoing Labor Code sections and safety orders, and concluded as follows: "If you find that a party to this action violated a Labor Code Section or Safety Order just read to you, you will find that such violation was negligence unless you find by a preponderance of the evidence that the party did what might reasonably be expected of a person of ordinary prudence, acting under similar circumstances, who desired to comply with the law." This instruction apparently was derived from Evidence Code section 669, subdivision (b)(1). Those portions of the safety orders read to the jury are set forth in an appendix to our opinion herein.

ated area) were therefore proper. (See *De Cruz* v. *Reid,* 69 Cal.2d 217, 227-229 [70 Cal.Rptr. 550, 444 P.2d 342]; *Markley* v. *Beagle,* 66 Cal.2d 951, 956-957 [59 Cal.Rptr. 809, 429 P.2d 129]; *Porter* v. *Montgomery Ward & Co., Inc.,* 48 Cal.2d 846, 848-849 [313 P.2d 854]; *Williams* v. *Pacific Gas & Electric Co.,* 181 Cal.App.2d 691, 708-709 [5 Cal.Rptr. 585]; *Lokey* v. *Pine Mountain Lbr. Co.,* 205 Cal.App.2d 522, 531-532 [23 Cal.Rptr. 293]; *Gaw* v. *McKanna,* 228 Cal.App.2d 348, 353 [39 Cal. Rptr. 428].)

Defendant contends, however, that the remaining safety orders were inapplicable to persons such as plaintiff and were not intended to prevent the type of injury which he suffered.[3] According to defendant, these orders by their terms were intended to apply only to "employees" working in an excavation site, and to protect those employees from excavation hazards such as landslides and moving ground. Thus, defendant argues, although breach of these orders might have afforded a basis for finding that defendant was negligent *toward its employees,* Parsons and Thorne, that breach would not constitute negligence *toward plaintiff* himself. (See *Crain* v. *Sestak,* 262 Cal.App.2d 478, 486 [68 Cal.Rptr. 849].) Yet the court's instructions permitted the jury to find defendant negligent (and base an award to plaintiff upon such finding) if the jury found that defendant had breached such an order.

We may assume, arguendo, that safety orders 1540, subdivisions (a) and (b), and 1546 were inapplicable to plaintiff and were not intended to protect against the type of injury suffered by him. The question remains whether the trial court properly instructed the jury that a finding of defendant's negligence could be based upon its violation of a safety order or orders applicable only to its employees, including Parsons and Thorne.

Plaintiff proceeded to trial under *two* theories of recovery. First, plaintiff alleged that defendant was negligent *toward him* in breaching the common law and statutory duties described above. Second, plaintiff alleged that defendant was negligent *toward its employees,* and that plaintiff, as a rescuer, was entitled to recover for injury he incurred in the course of rescuing those employees from their peril. We shall see that since plaintiff was a rescuer as a matter of law, the trial court properly instructed the jury regarding defendant's negligence toward Parsons and Thorne.

---

[3] As stated in *Nunneley* v. *Edgar Hotel, supra,* 36 Cal.2d 493, 497, "Violation of a legislative enactment by failing to do a required act results in liability only if '. . . the harm which the violation causes is that from which it was the purpose of the enactment to protect. . . .' (Rest. Torts, § 286, comment on clause c.)" See also Evidence Code section 669, subdivision (a)(3).

■ The cases have developed the rule that persons injured in the course of undertaking a necessary rescue may, absent rash or reckless conduct on their part, recover from the person whose negligence created the peril which necessitated the rescue. (*Pierce* v. *United Gas and Electric Co.,* 161 Cal. 176, 188 [118 P. 700]; *Henshaw* v. *Belyea,* 220 Cal. 458 [31 P.2d 348]; *Scott* v. *Texaco, Inc.,* 239 Cal.App.2d 431 [48 Cal.Rptr. 785]; *Bilyeu* v. *Standard Freight Lines,* 182 Cal.App.2d 536 [6 Cal.Rptr. 65]; *Petersen* v. *Lang Transp. Co.,* 32 Cal.App.2d 462, 467 [90 P.2d 94]; see generally 57 Am.Jur.2d, Negligence, § § 227-229; Prosser, Torts (4th ed.) § 43, pp. 258-259, § 44, pp. 277-278; Tiley, *The Rescue Principle,* 30 Modern L.Rev. 25).

■ Although its precise limits are not yet fully developed, the rescue doctrine varies the ordinary rules of negligence in two important respects: (1) it permits the rescuer to sue on the basis of defendant's initial negligence toward the party rescued, without the necessity of proving negligence toward the rescuer,[4] and (2) it substantially restricts the availability of the defense of contributory negligence by requiring defendant to prove that the rescuer acted rashly or recklessly under the circumstances.[5]

■ The theory which underlies the rescue rule is, in essence, that "rescuers, as a class, are always foreseeable when the defendant's negligence endangers anyone." (Prosser, Torts, *supra,* at p. 258, discussing Justice Cardozo's rationale of the doctrine.) Thus, if defendant creates a situation of peril for one person (the victim), defendant properly may be charged with having proximately caused not only that peril but also the rescue and any injury suffered during its course. (See Tiley, *supra,* 30 Modern L.Rev., p. 25.) In the instant case, defendant could reasonably foresee that plaintiff might injure himself while attempting to rescue Parsons and Thorne. (See *Bilyeu* v. *Standard Freight Lines, supra,* 182 Cal.App.2d 536, 542-543.) Therefore, if defendant negligently created the peril which entrapped those men, defendant would be liable under the rescue doctrine for the injuries

---

[4]As stated in *Pierce* v. *United Gas and Electric Co., supra,* 161 Cal. 176, 188, "Whether or not a recovery could be had on account of [the rescuer's] death . . . depends entirely, we think, upon the question whether or not there was any negligence on the part of defendant insofar as [the rescued person] was concerned. . . . In other words, defendant cannot be liable for [the rescuer's] death, caused by his effort to save [the rescued person] from injury, however praiseworthy that effort was, unless [the latter's] dangerous condition was due, in part at least, to defendant's negligence." (See Prosser, Torts, *supra,* at p. 277.)

[5]As stated in *Scott* v. *Texaco, Inc., supra,* 239 Cal.App.2d 431, 434-435, "Essentially, the rescue rule expands the risks which a rescuer may properly take in order to save a third person in danger from harm. Conduct which ordinarily might be held negligent may not necessarily be so considered when performed by a rescuer in an effort to save another from bodily injury. [Citations.]"

plaintiff suffered herein, assuming that plaintiff acted neither rashly nor recklessly.

■ Defendant points out that plaintiff had previously agreed to provide necessary medical care and treatment to employees injured at the construction site and that by reason of that prior agreement plaintiff was not acting in the capacity of a stranger or gratuitous volunteer. ■ It is true that persons such as firefighters, whose occupation by its very nature exposes them to particular risks of harm, " 'cannot complain of negligence in the creation of the very occasion for [their] engagement.' " (*Giorgi* v. *Pacific Gas & Electric Co.,* 266 Cal.App.2d 355, 359 [72 Cal.Rptr. 119].) ■ Since it is the fireman's business to deal with fire, "a paid fireman has no cause of action against one whose passive negligence caused the fire in which he was injured." (*Id.* at p. 360; see *Krauth* v. *Geller,* 31 N.J. 270 [157 A.2d 129, 131]; *Nastasio* v. *Cinnamon* (Mo.) 295 S.W.2d 117, 120-121; Tiley, *The Rescue Principle, supra,* 30 Modern L.Rev., p. 30.)

■ It is not, however, a doctor's business to cope with steep, slippery embankments. Plaintiff agreed only to furnish medical aid to injured employees; he did not further agree to expose himself to risks and hazards not necessarily inherent in the performance of his services.

The evidence in the instant case was uncontradicted that defendant's employees Parsons and Thorne were in peril of their lives, that immediate action was required to save or assist them, that plaintiff undertook to rescue them, and that he was injured while in the course of doing so. ■ It is apparent, therefore, that plaintiff was, as a matter of law, a rescuer and entitled to the benefits of the rescuer doctrine, including an instruction to the jury that as a rescuer, plaintiff could recover on the basis of defendant's negligence to Parsons and Thorne, if plaintiff's injury was a proximate result thereof, and if plaintiff acted neither rashly nor recklessly under the circumstances.[6] Accordingly, the trial court did not

---

[6]The court's instructions on the issue of contributory negligence were somewhat inconsistent. At one point the court correctly instructed that plaintiff could not recover if he were negligent himself unless he was a rescuer, and that a rescuer is entitled to assume extraordinary risks and perform negligent acts so long as he does not act recklessly. Later, however, the court summarized the issues in such a way as to exclude the issue of contributory negligence or recklessness, should the jury find plaintiff to be a rescuer. If error was committed, however, it was not prejudicial for there was no evidence introduced to justify submitting the question of recklessness to the jury. At all times, plaintiff was directed to the rescue site by defendant's employees; he simply followed their lead and took no independent action, a reasonable course of conduct under the circumstances. Defendant has not contended otherwise.

err in instructing the jury that a finding of defendant's negligence could be based upon a violation of safety orders applicable to its own employees.[7]

Defendant contends that there was insufficient evidence introduced at trial regarding its compliance or noncompliance with the foregoing safety orders to justify an instruction on the subject. █ Generally, "Even though an instruction is couched in proper language it is improper, if it finds no support in the evidence, and the giving of it constitutes prejudicial error if it is calculated to mislead the jury. [Citations.]" (*Davenport* v. *Stratton,* 24 Cal.2d 232, 254 [149 P.2d 4]; see 4 Witkin, Cal. Procedure (2d ed. 1971) Trial, § 240, pp. 3054-3055.) █ In determining whether the giving of an irrelevant instruction constituted prejudicial error, the reviewing court must consider all of the circumstances of the case, including the evidence and the other instructions given; no precise formula can be drawn. (*Kingery* v. *Southern Cal. Edison Co.,* 190 Cal.App.2d 625, 638 [12 Cal.Rptr. 173]; see *Butigan* v. *Yellow Cab Co.,* 49 Cal.2d 652, 660-661 [320 P.2d 500].)

First, we must determine whether there was any evidence in the record from which the jury properly could have inferred that the various safety orders were applicable to the instant case. ( See *De Cruz* v. *Reid, supra,* 69 Cal.2d 217, 230.) Our examination of the record discloses that evidence was introduced regarding the nature of defendant's activities at the site, the methods employed in excavating the spillway and, to some extent at least, the safety precautions and supervision provided by defendant. Further, there was evidence indicating that defendant may have permitted Parsons and Thorne to work in the cut-off trench, following a rainfall, without providing adequate precautions for their safety (such as the use of anchor bolts or shoring) and without supervising their work. Accordingly, there would appear to have been sufficient evidence introduced at trial to justify instructing the jury regarding the safety orders in question, including defendant's duty to make a reasonable examination of an excavation to determine that no danger of moving ground exists (1540, subd. (a)), to effectively guard walls and faces of an excavation (1540, subd. (b)), to inspect and make safe any material dangerous to employees exposed to falling earth (1546, subds. (a) and (b)), and to employ a trained employee

---

[7]The court failed to explain to the jury that plaintiff could recover on the basis of such negligence only if he were a rescuer. However, since plaintiff was a rescuer as a matter of law, no error was committed in removing this question from the jury's consideration. By its verdict the jury necessarily found defendant negligent, either toward plaintiff himself or toward Parsons and Thorne. Since plaintiff was a rescuer, he was entitled to recover under either theory. Although we cannot say upon which basis the jury found defendant to be negligent, that uncertainty does not vitiate the verdict.

to give warning when loose rock or other material are about to fall (1546, subd. (d)).

But even were we to conclude that instructing on some part or parts of the foregoing safety orders was improper for the reason that the evidence did not indicate whether or not defendant obeyed them, we would be reluctant under the facts of this case to hold that an instruction thereon was prejudicial error. "The very fact which makes the instruction . . . erroneous—absence of any evidence to support it—suggests that the jury ignored this dim will-o'-the-wisp and passed on to the tangible issues in the case. Indeed, in Instruction No. 4 the court told them to disregard any instruction not justified by the facts. . . . We must assume that the jury understood the instructions and correctly applied them to the facts. [Citations.]" (*Wilkinson* v. *Southern Pacific Co.*, 224 Cal.App.2d 478, 489-490 [36 Cal.Rptr. 689]; see *People* v. *Hairgrove*, 18 Cal.App.3d 606, 608-609 [96 Cal.Rptr. 142].)

In the instant case, the jury was advised by the court that "The applicability of some of these instructions will depend upon the conclusions you reach as to what the facts are. As to any such instruction, the fact that it has been given must not be taken as indicating an opinion of the Court that the instruction will be necessary or as to what the facts are. If an instruction applies only to a state of facts which you find does not exist, you will disregard the instruction." In view of the substantial evidence of defendant's negligence which was introduced at trial, we do not find it reasonably probable that, absent the error, the jury would have returned a verdict in defendant's favor. (*People* v. *Watson*, 46 Cal.2d 818, 836 [299 P.2d 243].)

Defendant next contends that even if there was sufficient evidence to justify instructing the jury regarding the safety orders applicable to defendant, nevertheless the orders which were read to the jury were not in effect at the time of the accident and that consequently their submission to the jury was improper. It is true that safety orders 1540 and 1546 did not become effective until August 8, 1965, whereas the accident occurred on December 21, 1964. The substance of those orders were, however, contained in previous orders which were in effect upon the date of the accident and, accordingly, defendant could not have been prejudiced by the error.

Both sets of orders are set forth verbatim in the appendix to this opinion. As will be seen by comparing them, those portions of safety order 1540 which were read to the jury were also contained, with minor variances, in former safety order 1526, subdivisions (a), (c) and (j). On the other hand,

safety order 1546 contained certain provisions not appearing in former sections 1526 and 1527, including the requirement of a "daily physical inspection" of the faces and banks of the excavation (1546, subd. (a)), the prohibition against persons working near faces made unsafe by rain, until further inspection (1546, subd. (b)), and the requirement that a "trained employee" with a whistle or other warning device be employed "where necessary" to warn of falling rocks or other materials (1546, subd. (d)).

Although the foregoing provisions of safety order 1546 do not appear in former orders 1526 and 1527, the latter orders required defendant to make a *thorough* survey of the work prior to excavation to determine probable hazards and necessary safeguards (1526, subd. (b)) to provide immediate supervision *at all times* by an employee authorized to make safety modifications in work methods (1526, subd. (h)), to make *frequent* examinations of material under excavation to insure the protection of workmen from moving ground (1526, subd. (h)), and to provide for *effective* guarding of trenches against the hazard of moving ground (1527, subd. (a)). It is apparent from the foregoing comparison of the two sets of safety orders that the duties of care imposed upon defendant under the orders read to the jury were not substantially different from (and certainly no stricter than) the duties imposed under the orders actually in effect at the time of the accident. We conclude that defendant could not have been prejudiced by the court's instructions on safety orders 1540 and 1546.

 Defendant finally contends that the trial court erred in failing to instruct the jury that in order to find in plaintiff's favor, defendant's violation of the foregoing safety orders must be found to have been a proximate cause of *both* the injury to plaintiff and the peril which endangered Parsons and Thorne. The jury was only instructed that it must find that defendant's negligence in violating these orders was a proximate cause of *plaintiff's* injuries. By its verdict, however, the jury impliedly found some causal nexus between defendant's negligence and plaintiff's injury. Assuming that the jury's finding of negligence was based upon defendant's violation of the safety orders, the only possible causal nexus under the evidence would have been the creation of a peril to Parsons and Thorne which proximately resulted in plaintiff's fall. It is therefore not reasonably probable that defendant was prejudiced by the court's instructions on proximate cause.

The judgment is affirmed.

Wright, C. J., McComb, J., Peters, J., Tobriner, J., Mosk, J., and Sullivan, J., concurred.