259 N.J. Super. 320 (1992)
612 A.2d 1344
JAMES J. KIERNAN, PLAINTIFF,
v.
AL MILLER (IMPROPERLY IMPLEADED AS MILLER INVESTMENT CO.), OXFORD CONSTRUCTION CO. INC., LOUIS ROTHBERG & SONS AND RUSSELL FRANCIS AND JOHN DOES A TO Z, DEFENDANTS.
Superior Court of New Jersey, Law Division Civil Action, Union County.
Decided July 16, 1992.
*321 Wayne D. Greenfeder (Kramer, Burns & Lovell, attorneys), for plaintiff.
William D. Joachim (K. Ruth Larson, attorney), for defendants Russell Francis and Rothberg & Sons, Inc.
MENZA, J.S.C.
Defendant moves to dismiss the plaintiff's claim on the basis that it is barred by the fireman's rule.
The question presented in this case is whether the fireman's rule applies to a volunteer first aid worker who is injured while rendering medical assistance to an injured person.
This is a novel question.
Plaintiff is a volunteer first aid worker associated with an emergency medical service known as the Collman Emergency Unit. Collman has an arrangement with the Township of Union to provide ambulance and first aid services to the residents of the township.
On January 11, 1991, plaintiff responded to a call for medical assistance for a person injured at a construction site. On arriving at the scene, plaintiff entered an excavation ditch in order to render assistance to the injured person. While rendering assistance, the sidewalls of the ditch caved in on the plaintiff causing him injury.
Although the plaintiff receives no remuneration for his work, he does receive workers' compensation benefits and has filed a workers' compensation claim for the injuries he sustained in the accident.
*322 In Krauth v. Geller, 31 N.J. 270, 157 A.2d 129 (1960), the Supreme Court held that an owner or occupier of land is not liable to paid firemen for negligence with respect to the creation of a fire. The Court discussed assumption of risk as a rationale for the rule:
The rationale of the prevailing rule is sometimes stated in terms of "assumption of risk," used doubtless in the so-called "primary" sense of the term and meaning that the defendant did not breach a duty owed, rather than that the fireman was guilty of contributory fault in responding to his public duty. (citation omitted). Stated affirmatively, what is meant is that it is the fireman's business to deal with that very hazard and hence, perhaps by analogy to the contractor engaged as an expert to remedy dangerous situations, he cannot complain of negligence in the creation of the very occasion for his engagement. In terms of duty, it may be said there is none owed the fireman to exercise care so as not to require the special services for which he is trained and paid. (at 273-274, 157 A.2d 129).
It then discussed the public policy considerations underlying the rule:
Probably most fires are attributable to negligence, and in the final analysis the policy decision is that it would be too burdensome to charge all who carelessly cause or fail to prevent fires with the injuries suffered by the expert retained with public funds to deal with those inevitable, although negligently created, occurrences. Hence, for that risk, the fireman should receive appropriate compensation from the public he serves, both in pay which reflects the hazard and in workmen's compensation benefits for the consequences of the inherent risks of the calling. (at 273-274, 157 A.2d 129).
In Berko v. Freda, 93 N.J. 81, 459 A.2d 663 (1983), the Court extended the fireman's rule to police officers. In doing so, the Court elaborated on the rationale forming the basis for the rule:
The similarity between firefighters and police officers compels the extension of the rule [fireman's rule] to the latter. Both are paid to confront crises and allay dangers created by an uncircumspect citizenry, a circumstance that serves to distinguish firefighters and police from most other public employees. Citizens summon police and firefighters to confront danger. Governmental entities maintain police and fire departments in anticipation of those inevitable physical perils that burden the human condition, whereas most public employment posts are created not to confront dangers that will arise but to perform some other public function that may incidentally involve risk. (at 86-87, 459 A.2d 663).
........
This fundamental concepts rests on the assumption that governmental entities employ firefighters and police officers, at least in part, to deal with the hazards *323 that may result from their taxpayer's own future acts of negligence. (at 87, 459 A.2d 663).
........
... the taxpayer who pays the fire and police departments to confront the risks occasioned by his own future acts of negligence does not expect to pay again when the officer is injured while exposed to those risks. Otherwise, individual citizens would compensate police officers twice: once for risking injury, once for sustaining it. (at 88, 459 A.2d 663).
........
We perceive more than mere dollars-and-cents considerations underpinning the fundamental justice of the "fireman's rule." There is at work here a public policy component that strongly opposes the notion that an act of ordinary negligence should expose the actor to liability for injuries sustained in the course of a public servant's performance of necessary, albeit hazardous, public duties. In the absence of a legislative expression of contrary policy, a citizen should not have to run the risk of a civil judgment against him for negligent acts that occasion the presence of a firefighter at the scene of a carelessly-set fire or of a police officer at a disturbance or unlawful incident resulting from negligent conduct. (at 88-89, 459 A.2d 663).
And again in Rosa v. Dunkin' Donuts of Passaic, 122 N.J. 66, 583 A.2d 1129 (1991):
The policies underlying the fireman's rule are simple, straightforward ones. The accidents and emergencies occasioning the presence of firefighters and police officers are a sad fact of life not soon to be eliminated. (citation omitted). They are, however, also the very reason for the existence of the public forces of the "finest" and the "bravest."
........
A taxpayer who pays the fire and police departments to confront the risks should not have to pay again.
More significant, however, is the realization that the very nature of the profession that the officers have chosen embodies risks that the emergencies to which they will respond will neither be conveniently timed nor situated for rescuer, victim, or property-owner  they have assumed (and been trained to handle) those risks. (Citations omitted). (at 72, 583 A.2d 1129).
In Ferraro v. Demetrakis, 167 N.J. Super. 429, 400 A.2d 1227 (App.Div. 1979); the court extended the rule to volunteer firemen.
There are no New Jersey cases which have considered the question of whether the fireman's rule applies to a first aid worker, but there is one New Jersey case which has addressed its applicability to an emergency rescue squad person. In *324 Siligato v. Hiles, 236 N.J. Super. 64, 563 A.2d 1172 (Law Div. 1989), the court extended the fireman's rule to include volunteer emergency rescue squad members. In doing so, the court stated:
In Ferraro, the volunteer public servant was a fireman; there appears no logical reason not to apply the rule to a volunteer emergency rescue squad member. The very nature of an emergency rescue squad member's business involves the saving, delivering or freeing of others from danger. Implicit in this work is the risk of injury.
Just as volunteer firemen are covered by worker's compensation law, so too are volunteer first aid or rescue squad workers. N.J.S.A. 34:15-43. Therefore, this Court holds that the application of the "fireman's rule" is extended to volunteer emergency squad workers. (at 67, 563 A.2d 1172).
Cases in other jurisdictions which have addressed the question of whether other emergency type personnel should be enveloped by the fireman's rule have concluded that the rule should not be extended beyond policemen and firemen.
In Krause v. U.S. Truck Company, Co. Inc., 787 S.W.2d 708 (Mo. 1990), the Missouri Supreme Court held that the fireman's rule does not extend to an ambulance attendant who was injured while at the scene of an automobile accident. The Court stated:
The observant reader will have noted that Krause was not trained or employed as a fireman or policeman. He was an ambulance attendant. Section 190-100(3), RSMo (Supp. 1988), defines an ambulance attendant as: "[A] trained and qualified individual responsible for the operation of an ambulance and the care of the patients transported thereby whether or not the attendant also serves as driver." (Emphasis added). (at 711).
........
Policemen and fireman have exceptional responsibilities. At the scene of an emergency they are covered by a panoply of legal powers and duties necessary to control the people and place where rescue is required. They are expected to act with daring and dispatch to protect life and property. Other public servants may be sent to the scene to perform duties tangent to the emergency. But the official whose primary public duty is to confront danger is the fireman or policeman.
Krause was an ambulance attendant whose duties involved rendering first aid and transporting patients by ambulance. Those duties are performed after the imminent peril of fire, crime or disaster has passed. Nothing about those responsibilities imposes a duty to rescue. Unlike firemen and policemen, ambulance attendants are not clothed with either the duty or the authority to *325 control traffic, effect arrests, fight fires or enter collapsing buildings to save lives. As § 190.100(3) makes clear, society does not expect ambulance attendants to throw themselves in harm's way. The public policy and assumption of risk arguments evaporate when applied to persons having no express or implied public duty to confront and eliminate perils created by an uncircumspect citizen. Ambulance attendants are only peripherally involved in the hazard. (at 713).
In Solgaard v. Guy F. Atkinson Co., 99 Cal. Rptr. 29, 6 Cal.3d 361, 491 P.2d 821 (Cal. 1971), the California Supreme Court held that a doctor who is injured while attempting to reach an injured employee could recover from the person whose negligence created the peril which necessitated the doctor's rescue efforts.
In response to the defendant's argument that because the doctor had agreed to provide medical care and treatment to employees injured in the construction site, he should be afforded a status similar to a fireman who is obligated to respond to a fire, the Court said:
It is true that persons such as firefighters, whose occupation by its very nature exposes them to particular risks of harm, "cannot complain of negligence in the creation of the very occasion for [their] engagement" (citation omitted). Since it is the fireman's business to deal with fire, "a paid fireman has no cause of action against one whose passive negligence caused the fire in which he was injured." (Citations omitted).
It is not, however, a doctor's business to cope with steep, slippery embankments. Plaintiff agreed only to furnish medical aid to injured employees; he did not further agree too expose himself to risks and hazards not necessarily inherent in the performance of his services. (99 Cal. Rptr. at 33-34, 491 P.2d at 825-26).
In the case of Kowalski v. Gratopp, 177 Mich. App. 448, 442 N.W.2d 682 (Mich. App. 1989), the court was presented with a factual pattern similar to the instant case. In that case, a paramedic was injured while attending to a person injured in an automobile accident. The court responding to the argument that the fireman's rule provided immunity stated:
[F]ire fighters and police officers are different than other employees whose occupations may peripherally involve hazards. Safety officers are employed, specially trained, and paid to confront dangerous situations for the protection of society. They enter their professions with the certain knowledge that their personal safety is at risk while on duty. Property owners and occupiers cannot reasonably predict visits by safety officers or control their activities while on the premises. Finally, injuries suffered by safety officers while in the *326 course of their employment are compensable by workers' compensation, thereby spreading the cost and risk to the public. (quoting Kreski v. Modern Wholesale Electric Supply Co., 429 Mich. 347, 415 N.W.2d 178 (1987), emphasis in original).
Paramedics are employed and paid to treat injuries or illnesses which may arise out of dangerous situations. The paramedic's occupation is one which may peripherally involve hazards, but they are not employed, trained, or paid specifically to confront those hazards. (442 N.W.2d at 684).
I agree with the Kowalski court. Emergency medical assistance personnel do not fit within the rationale of the rule.
It is clear to this Court that the rationale of the rule as expressed in Krauth, Berko, and Rosa is simply not applicable to an emergency medical service worker whose job is to deal with medical emergencies. Unlike police officers and firefighters, medical personnel are neither trained nor expected "to confront and deal with dangerous situations," and although there are times when an emergency medical service worker might be placed in a dangerous situation, those situations are not inherent in the nature of the job, but rather tangential and incidental to it.
Under the circumstances, neither the assumption of risk rationale nor the public policy rationale is applicable to a medical emergency worker.
Since the rationale is inapplicable, so then is the rule. The plaintiff's claim is not, therefore, barred by the fireman's rule and the defendant's motion is denied.