[No. D049737. Fourth Dist., Div. One. Nov. 15, 2007.]

RICHARD MILLARD, Plaintiff and Appellant, v.
BIOSOURCES, INC., Defendant and Respondent.

## COUNSEL

Jeffrey M. Winter for Plaintiff and Appellant.

Walsh & Furcolo, Jason W. Wansor and Dinah McKean for Defendant and Respondent.

## OPINION

**NARES, Acting P. J.**—Richard Millard, a heating and air conditioning (HVAC) technician employed by an HVAC subcontractor, was injured when he was working in the attic of a commercial building that was being remodeled under the general supervision of the general contractor, Biosources, Inc. (Biosources). Millard alleges that the lights went out suddenly and he fell through the ceiling. Millard filed suit against Biosources.

The trial court granted summary judgment on Millard's complaint, finding (1) Biosources as the general contractor and electrical contractor had no duty of care to Millard under either the Labor Code or under the doctrine of "retained control," and (2) the decisions in *Privette v. Superior Court* (1993) 5 Cal.4th 689 [21 Cal.Rptr.2d 72, 854 P.2d 721] (*Privette*) and *Hooker v. Department of Transportation* (2002) 27 Cal.4th 198 [115 Cal.Rptr.2d 853, 38 P.3d 1081] (*Hooker*) barred his action.

On this appeal Millard asserts the court erred in granting summary judgment because (1) *Privette* did not bar his action as Biosources retained control of the electrical work; (2) Biosources owed a duty to him under Labor Code section 6304.5;[1] (3) Biosources's failure to exercise control of safety on the jobsite affirmatively contributed to Millard's injuries; (4) Biosources's failure to fulfill its assumed duty to determine the reason the lights went off previously on the day he was injured was an omission that affirmatively contributed to his injuries; and (5) the court failed to determine whether Millard's action included a cause of action for negligence per se. We affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

#### A. *The Incident*

Millard was an employee of Apex Mechanical Systems, Inc. (Apex). Apex was hired as a subcontractor to install upgrades to the HVAC system as part of a tenant remodel project on property located at 8810 Rehco Road in San Diego (the project). Biosources was the general contractor and electrical contractor for the project.

---

[1] All further statutory references are to the Labor Code unless otherwise specified.

Apex employees, including Millard, were directed by Apex as to the means and methods of work assignments on the jobsite. Biosources exercised general supervisory control over the project, but did not direct the means or methods of Millard's work.

On the morning of the incident, Millard was "troubleshooting" the HVAC system in an attic space. At that time, the lights were on in the attic space. The attic space could be traversed by a narrow catwalk consisting of 12-inch-wide steel beams that had no handrails.

Sometime around noon, Biosources electrician Wayne Corcoran inadvertently turned out the light in the attic when he tripped an unmarked circuit breaker while working at the electrical panel. Millard and another Apex employee exited the attic space using a flashlight and reported the problem to Corcoran, who said he would "look into it." The problem was corrected by Corcoran switching the breaker back on.

At approximately 3:00 p.m. that day, Millard was working alone in the attic space. Millard alleges that the lights in the attic went out while he was in the process of traversing the catwalk, causing him to lose his equilibrium. This caused him to step in a light fixture, which gave way, causing him to fall through the ceiling to the room below. Workers' compensation insurance covered Millard's injuries sustained in the accident.

Two Biosources employees who had been present at the project earlier that day, electrician Corcoran and job superintendent Mark Farnum, had both left for other jobsites approximately one hour prior to the accident. No Biosources personnel were working or present at the project when Millard fell from the attic space.

No one was working at the electrical panel and no one was found to have touched either of the two switchplates which control the lights in the attic space. One switchplate is located approximately 10 feet off the floor, next to the attic entry hatch, and can be reached only by climbing a ladder. The other switch is inside the attic space. It was standard practice to leave the attic lights on at all times.

At the time of the incident, the only other workers onsite were two other members of Apex's crew, an employee of the flooring subcontractor, and an employee of the caulking subcontractor. Immediately after Millard fell, the

lights in the attic space were found to be on. As first aid was being rendered to Millard immediately following the incident, Millard informed his co-worker, Tyler Sterling, that the lights in the attic had "flickered" before he fell. Sometime later, Millard told another Apex coworker, Paul Perry, the lights in the attic had flickered. At his deposition, Millard denied telling anyone that the lights flickered and testified that the lights had gone out.

## B. *Biosources's Motion for Summary Judgment*

Biosources brought a motion for summary judgment, arguing that (1) Millard's action was barred by the *Privette* doctrine, and (2) the retained control exception did not apply because Biosources did not affirmatively contribute to Millard's injuries. Millard opposed the motion, asserting (1) Biosources violated applicable OSHA (Occupational Safety and Health Administration) regulations; (2) *Privette* did not apply because Biosources's duty was created by the Labor Code under the case *Elsner v. Uveges* (2004) 34 Cal.4th 915 [22 Cal.Rptr.3d 530, 102 P.3d 915] (*Elsner*); and (3) Biosources affirmatively contributed to his injuries by failing to conduct a safety meeting or post a safety tag near the electrical panel and light switch to the attic light.

## C. *The Court's Ruling*

The court granted Biosources's motion for summary judgment. The court first noted that Millard's complaint "does not allege a cause of action for [n]egligence per [s]e." The court then framed the issue to be decided as "whether [Biosources] as the general contractor/electrical contractor, owes a legal duty to [Millard] to either have a safety meeting or to post a safety tag near the electrical panel and light switch to the attic light, and [whether] this conduct affirmatively contributed to [Millard's] injuries." The court rejected Millard's argument that *Elsner* supplanted *Privette* and *Hooker* and found it not to be controlling: "It is factually distinguishable in that in *Elsner* the general contractor admitted to actions (improperly constructing scaffolding which gave way), which contributed to the injury-causing event. Additionally, *Elsner* was not a summary judgment motion but involved in limine motions and jury instructions. Further, *Elsner* did not expressly do away with the doctrines developed in *Privette* and *Hooker* which insulate a general contractor from liability for injuries to employees of subcontractors except when actions of the general contractor affirmatively cause or contribute to the injury[-]causing . . . event." The court then found "[Biosources] has shown

that nothing it did or failed to do affirmatively contributed to [Millard's] injuries." Finally, the court found that Millard failed to "submit admissible evidence to raise a material issue of fact that *Privette* does not apply or that [Biosources] owed [Millard] a duty due to retained control."

## DISCUSSION

### I. *APPLICABLE SUMMARY JUDGMENT STANDARDS*

The summary judgment procedure determines whether there is evidence requiring the fact-weighing procedure of a trial. " '[T]he trial court in ruling on a motion for summary judgment is merely to determine whether such issues of fact exist, and not to decide the merits of the issues themselves.' [Citation.] The trial judge determines whether triable issues of fact exist by reviewing the affidavits and evidence before him or her and the reasonable inferences which may be drawn from those facts." (*Morgan v. Fuji Country USA, Inc.* (1995) 34 Cal.App.4th 127, 131 [40 Cal.Rptr.2d 249].) However, a material issue of fact may not be resolved based on inferences if contradicted by other inferences or evidence. (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 856–857 [107 Cal.Rptr.2d 841, 24 P.3d 493].)

To prevail on a motion for summary judgment, a defendant must show one or more elements of the plaintiff's cause of action cannot be established or that there is a complete defense to that cause of action. (Code Civ. Proc., § 437c, subd. (p)(2).) The evidence of the moving party is strictly construed and that of the opponent liberally construed, and any doubts as to the propriety of granting the motion are to be resolved in favor of the party opposing the motion. (*Branco v. Kearny Moto Park, Inc.* (1995) 37 Cal.App.4th 184, 189 [43 Cal.Rptr.2d 392].) The trial court does not weigh the evidence and inferences, but merely determines whether a reasonable trier of fact could find in favor of the party opposing the motion, and must deny the motion when there is some evidence that, if believed, would support judgment in favor of the nonmoving party. (*Alexander v. Codemasters Group Limited* (2002) 104 Cal.App.4th 129, 139 [127 Cal.Rptr.2d 145].) Consequently, summary judgment should be granted only when a moving party is entitled to judgment as a matter of law. (Code Civ. Proc., § 437c, subd. (c).)

Because a motion for summary judgment raises only questions of law, we independently review the parties' supporting and opposing papers and apply the same standard as the trial court to determine whether there exists a triable

issue of material fact. (*City of San Diego v. U.S. Gypsum Co.* (1994) 30 Cal.App.4th 575, 582 [35 Cal.Rptr.2d 876]; *Southern Cal. Rapid Transit Dist. v. Superior Court* (1994) 30 Cal.App.4th 713, 723 [36 Cal.Rptr.2d 665].) In practical effect, we assume the role of a trial court and apply the same rules and standards that govern a trial court's determination of a motion for summary judgment. (*Lopez v. University Partners* (1997) 54 Cal.App.4th 1117, 1121–1122 [63 Cal.Rptr.2d 359].) We liberally construe the evidence in support of the party opposing summary judgment (*Wiener v. Southcoast Childcare Centers, Inc.* (2004) 32 Cal.4th 1138, 1142 [12 Cal.Rptr.3d 615, 88 P.3d 517]), and assess whether the evidence would, if credited, permit the trier of fact to find in favor of the party opposing summary judgment under the applicable legal standards. (Cf. *Aguilar v. Atlantic Richfield Co.*, *supra*, 25 Cal.4th at p. 850.)

## II.  *THE* PRIVETTE *DOCTRINE AND EXCEPTIONS*

### A.  *Common Law Peculiar Risk Doctrine*

At common law a person who hired an independent contractor was not liable to third parties for injuries caused by the contractor's negligent performance of the work. (*Privette, supra*, 5 Cal.4th at p. 693.) There were numerous exceptions to this general rule, including one that came to be known as the "peculiar risk" doctrine. (*Ibid.*) Under this doctrine, the person who hired an independent contractor to perform inherently dangerous work could be held liable for tort damages when the contractor's negligent performance of the work caused injury to others. (*Id.* at p. 691.) The principal rationale for this exception to the general rule of nonliability was to ensure that an innocent bystander who was injured by a contractor's negligence would have a source of compensation even if the contractor was insolvent. (*Hooker, supra*, 27 Cal.4th at p. 204.) It was also based on the recognition that a hirer who was held vicariously liable to the injured claimant under the peculiar risk doctrine was entitled to seek equitable indemnity from the contractor whose negligence caused the injury, thus providing some assurance that the ultimate responsibility for the harm caused by the peculiar risk of the work would be borne by the person at fault for the injury. (*Privette, supra*, 5 Cal.4th at pp. 695 & fn. 2, 701.) To the extent the contractor was insolvent, the doctrine shifted the risk of loss "to the person who contracted for and thus primarily benefited from the contracted work." (*Id.* at p. 701.)

The peculiar risk doctrine was eventually expanded to allow an employee of a subcontractor to recover from a nonnegligent hirer (usually, a general contractor or a property owner) for injuries caused by the subcontractor's negligence. (*Privette, supra*, 5 Cal.4th at pp. 696–698.)

## B.  Privette

■  In *Privette* the California Supreme Court reconsidered the applicability of the peculiar risk doctrine and concluded that the injured employee of a negligent subcontractor could not sue the nonnegligent hirer under that doctrine. It reasoned that California's previously "expansive view" of the peculiar risk doctrine gave the employee an undue windfall relative to other employees injured on the job, whose recoveries would be limited to those damages recoverable under the workers' compensation law, and created the anomalous result of imposing greater liability on a nonnegligent hirer than that of the contractor whose negligence actually caused that injury. (*Privette, supra,* 5 Cal.4th at pp. 698, 702.) The court concluded that the workers' compensation system was adequate to promote workplace safety and to protect the interests of the injured employee and that no societal interest was advanced by such an application of the peculiar risk doctrine, holding "because workplace injuries are covered by workers' compensation, liability under the doctrine of peculiar risk does not extend to the employees of an independent contractor hired to do dangerous work." (*Id.* at p. 702; see also *id.* at pp. 692, 698–701.)

■  Applying *Privette*, the California Supreme Court has also held that a person who hires an independent subcontractor to do inherently dangerous work, but fails to contractually or otherwise require that the subcontractor take special precautions to avoid the peculiar risks involved in the work, cannot be held liable under the peculiar risk doctrine for injuries to the subcontractor's employee. (*Toland v. Sunland Housing Group, Inc.* (1998) 18 Cal.4th 253, 267 [74 Cal.Rptr.2d 878, 955 P.2d 504].) The court stated that its decision was "premised on policy: whether the peculiar risk liability of a general contractor, a landowner, or any other hirer of an independent contractor should, consistent with its common law origins, be limited to protecting third parties such as innocent bystanders or neighboring landowners against the possible insolvency of the hired contractor at fault, or whether such liability should extend to the independent contractor's employees as well. As we concluded in *Privette* . . . it is illogical and unfair that a landowner or other person who hires an independent contractor should have greater liability for the independent contractor's negligence towards the contractor's employees than the independent contractor whose liability is limited to providing workers' compensation coverage." (*Id.* at p. 270.)

The high court reiterated this point in *Camargo v. Tjaarda Dairy* (2001) 25 Cal.4th 1235, 1244 [108 Cal.Rptr.2d 617, 25 P.3d 1096], holding that a hiring property owner or general contractor is not liable for injuries to employees of its independent contractors based on the theory that the owner or contractor was negligent in hiring the independent contractor.

## C. *Retained Control/Affirmative Contribution Exception*

█ In 2002 the California Supreme Court, in *Hooker, supra*, 27 Cal.4th 198, was presented with the issue whether the hirer of an independent contractor could be held liable for injuries to the contractor's employee resulting from the contractor's negligence under the theory that the hirer retained control of the work but negligently exercised that control. The high court held that a hirer of an independent contractor was not liable to an employee of the contractor merely because the hirer retained control over safety conditions at a worksite, but was liable to such an employee insofar as its exercise of retained control *affirmatively contributed to the employee's injuries*. (*Id.* at p. 213.) The court reasoned that imposing tort liability where the hirer's exercise of retained control affirmatively contributed to the injury was consistent with *Privette* and its progeny "because the liability of the hirer in such a case is *not* ' "in essence 'vicarious' or 'derivative' in the sense that it derives from the 'act or omission' of the hired contractor." ' [Citation.] To the contrary, the liability of the hirer in such a case is *direct* in a much stronger sense of that term." (*Id.* at p. 212; see also *McKown v. Wal-Mart Stores, Inc.* (2002) 27 Cal.4th 219, 222, 225 [115 Cal.Rptr.2d 868, 38 P.3d 1094] [holding that a hirer "is liable to an employee of an independent contractor insofar as the hirer's provision of unsafe equipment affirmatively contributes to the employee's injury"; in such a case it is the hiring party's own negligence, not that of the contractor, that renders it liable].)

"Affirmative contribution" occurs where a general contractor " 'is actively involved in, or asserts control over, the manner of performance of the contracted work. [Citation.] Such an assertion of control occurs, for example, when the principal employer *directs* that the contracted work be done by use of a certain mode or otherwise interferes with the means and methods by which the work is to be accomplished. [Citations.]' [Citation.]" (*Hooker, supra*, 27 Cal.4th at p. 215.)

In this case, Millard did not submit evidence sufficient to raise a triable issue of fact that Biosources affirmatively contributed to Millard's injuries. Biosources did not control the means and methods of Millard's work. No Biosources personnel were at the worksite at the time Millard fell.

Millard attempts to connect the incident in the morning when Corcoran mistakenly tripped a circuit breaker while working on an electrical panel with the accident that occurred that afternoon. However, Corcoran could have no connection to the attic lights going out or "flickering" in the afternoon as he was not present at that time. Moreover, Millard has presented no evidence that the circuit breaker was tripped again immediately prior to his fall. The only evidence before the court was that the lights in the attic space were on

immediately following Millard's fall. Although Millard speculates that the two events were connected, he has not submitted any evidence why the lights suddenly went out again in the afternoon, or why Biosources was responsible for that event. Thus, even if it could be shown that Biosources retained control over safety conditions at the project, there is no triable issue of fact that Biosources affirmatively contributed to Millard's injuries.

D.  *Section 6304.5 and the* Elsner *Decision*

Before a 1999 amendment, section 6304.5 provided: "It is the intent of the Legislature that the provisions of this division [containing Labor Code safety provisions] *shall only be* applicable to proceedings against employers . . . for the exclusive purpose of maintaining and enforcing employee safety. [¶] Neither this division nor any part of this division shall have any application to, nor be considered in, nor be admissible into, evidence in any personal injury or wrongful death action arising after the operative date of this section, except as between an employee and his [or her] own employer." (Stats. 1971, ch. 1751, § 3, p. 3780, eff. Apr. 1, 1972, italics added.)

"Every appellate court in the State of California [that] has considered the question of legislative intent of [former section 6304.5] has concluded Cal-OSHA regulations are not applicable to nor admissible in an employee's action against a third person not his or her employer." (*Widson v. International Harvester Co.* (1984) 153 Cal.App.3d 45, 52 [200 Cal.Rptr. 136].) In *Spencer v. G. A. MacDonald Constr. Co.* (1976) 63 Cal.App.3d 836, 854 [134 Cal.Rptr. 78], the court explained the legislation was intended to require injured employees suing third parties to prove their cases under the rules of common law negligence "like other personal injury litigants." Before the enactment of former section 6304.5, our high court held that Labor Code safety provisions and orders were admissible to show negligence per se. (See *Solgaard v. Guy F. Atkinson Co.* (1971) 6 Cal.3d 361, 366–367 [99 Cal.Rptr. 29, 491 P.2d 821]; *De Cruz v. Reid* (1968) 69 Cal.2d 217, 229–232 & fn. 10 [70 Cal.Rptr. 550, 444 P.2d 342]; *Porter v. Montgomery Ward & Co., Inc.* (1957) 48 Cal.2d 846, 847–849 [313 P.2d 854]; *Armenta v. Churchill* (1954) 42 Cal.2d 448, 455 [267 P.2d 303].)

However, as amended in 1999, section 6304.5 now provides: "It is the intent of the Legislature that the provisions of this division, and the occupational safety and health standards and orders promulgated under this code, *are applicable* to proceedings against employers for the exclusive purpose of maintaining and enforcing employee safety. [¶] Neither the issuance of, or failure to issue, a citation by the division shall have any application to, nor be considered in, nor be admissible into, evidence in any personal injury or wrongful death action, except as between an employee and his or her own

employer. *Sections 452 [permissive judicial notice] and 669 [negligence per se] of the Evidence Code shall apply to this division and to occupational safety and health standards adopted under this division in the same manner as any other statute, ordinance, or regulation.* The testimony of employees of the division shall not be admissible as expert opinion or with respect to the application of occupational safety and health standards. It is the intent of the Legislature that the amendments to this section enacted in the 1999–2000 Regular Session shall not abrogate the holding in *Brock v. State of California* (1978) 81 Cal.App.3d 752 [146 Cal.Rptr. 716]." (Italics added.)

■ Evidence Code section 452 permits judicial notice of state statutes and regulations. (Evid. Code, § 452, subd. (a).) Evidence Code section 669, subdivision (a) codifies the common law doctrine of negligence per se, under which statutes and regulations may be used to establish duties and standards of care in negligence actions: "The failure of a person to exercise due care is presumed if: [¶] (1) He violated a statute, ordinance, or regulation of a public entity; [¶] (2) The violation proximately caused death or injury to person or property; [¶] (3) The death or injury resulted from an occurrence of the nature which the statute, ordinance, or regulation was designed to prevent; and [¶] (4) The person suffering the death or the injury to his person or property was one of the class of persons for whose protection the statute, ordinance, or regulation was adopted."

In *Elsner, supra,* 34 Cal.4th 915, the California Supreme Court held that under amended section 6304.5, "Cal-OSHA provisions are to be treated like any other statute or regulation and may be admitted to establish a standard or duty of care in all negligence and wrongful death actions, *including third party actions.*" (*Elsner, supra,* 34 Cal.4th at p. 928, italics added.) Based upon this language, Millard asserts that, despite *Privette,* section 6304.5 allows admission of statutes and regulations to create a duty of care, even where the nonemployer contractor did not affirmatively contribute to the injured subcontractor's injuries.

However, an analysis of *Elsner* demonstrates that it was not intended to limit or impliedly overrule *Privette* and its progeny, and is inapplicable to the facts of this case. First, in *Elsner,* the roofing subcontractor's employee was injured at a construction project when scaffolding constructed by the defendant general contractor collapsed. (*Elsner, supra,* 34 Cal.4th at p. 924.) As the court in *Elsner* noted: "At trial, this case proceeded on a single theory: Uveges negligently furnished unsafe scaffolding *that contributed to Elsner's injury.*" (*Id.* at p. 937, italics added.) Thus, in *Elsner, Privette* was not at issue because the plaintiff was not attempting to impose liability on the general contractor for the negligence of others, but for the general contractor's affirmative contribution to his injuries. The court was not asked to and did not decide section 6304.5's impact, if any, on *Privette.*

█ Furthermore, the Supreme Court's discussion of the retroactivity of the amended version of section 6304.5 compels the conclusion that the 1999 amendments did not abrogate or limit *Privette* or its progeny. In assessing whether the amendments to section 6304.5 were retroactive, the high court in *Elsner* noted that the critical question is, "Does the law 'change[] the legal consequences of past conduct by imposing new or different liabilities based upon such conduct[?]' [Citation.] Does it 'substantially affect[] existing rights and obligations[?]' [Citation.] If so, then application to a trial of preenactment conduct is forbidden, absent an express legislative intent to permit such retroactive application." (*Elsner, supra,* 34 Cal.4th at p. 937.) The high court noted that "[t]he admission of provisions imposing broader duties on a defendant than existed under the common law expands the defendant's liability." (*Ibid.*)

The high court in *Elsner* then noted that the plaintiff's expert "testified to the content of various Cal-OSHA provisions for purposes of establishing the relevant standard of care. ([§§ 6400, 6401, 6403, 7151]; Cal. Code Regs., tit. 8, §§ 1513, 1637, 1640.) The jury was instructed on the requirements of these Cal-OSHA provisions, instructed on the duties imposed by sections 6400, 6401 and 6403, and instructed on *negligence per se.*" (*Elsner, supra,* 34 Cal.4th at p. 936, italics added.) The court then concluded that amended section 6304.5 could be applied retroactively because it did *not* expand the defendant general contractor's duty of care: "[T]he admission of sections 6400, 6401 and 6403 did not expand Uveges's common law duty of care. These provisions imposed on Uveges the duty to furnish a safe place of employment, to use safe practices and procedures, and to provide and use appropriate safety devices and safeguards. (§§ 6400, 6401, 6403.) But Uveges already owed Elsner a common law duty to provide safe equipment: '[W]hen a hirer of an independent contractor, by negligently furnishing unsafe equipment to the contractor, *affirmatively contributes to the injury of an employee of the contractor, the hirer should be liable to the employee for the consequences of the hirer's own negligence.*' [Citation.] At trial, this case proceeded on a single theory: *Uveges negligently furnished unsafe scaffolding that contributed to Elsner's injury.* That Frey, Uveges's agent, constructed the scaffolding from which Elsner fell was undisputed. Also undisputed was that when Uveges furnished scaffolding for the construction project, he had a common law duty to furnish safe scaffolding. The principal issues were breach, causation, and comparative negligence: whether the scaffolding met the standard of care, whether any defects contributed to Elsner's injuries, and whether Elsner's own conduct contributed to his injuries. Thus, Uveges cannot complain that the jury verdict in this case arose from a retroactive expansion of his duty of care." (*Elsner, supra,* 34 Cal.4th at p. 937, italics added.)

Thus, as the court in *Elsner* emphasized, amended section 6304.5 was not intended to expand a general contractor's duty of care to an injured employee of a subcontractor. This includes the limitations on such a duty imposed by *Privette* and its progeny. Under amended section 6304.5, safety regulations may be admissible in actions by employees of subcontractors brought against general contractors that retain control of safety conditions, but only where the general contractor affirmatively contributed to the employee's injuries. As we have explained, *ante*, in this case there is no triable issue of fact that Biosources affirmatively contributed to Millard's injuries.

This result is further confirmed when it is recognized that the pertinent amendment to section 6304.5 only concerned causes of action for negligence per se.

## II.  *NEGLIGENCE PER SE*

The portion of amended section 6304.5 upon which Millard relies and *Elsner* analyzed only allows admission of Cal-OSHA (Department of Industrial Relations, Division of Occupational Safety and Health) or other safety statutes and regulations to establish a presumption of negligence under Evidence Code section 669, which codifies the doctrine of negligence per se. (*Elsner, supra*, 34 Cal.4th at pp. 931–932.)

This fact is made clear in *Elsner*'s discussion of the legislative history of the 1999 amendments to section 6304.5, in particular the various versions of the statute before the amendments became law: "As originally drafted, the proposed amendment to section 6304.5 could have been interpreted to offer greater admissibility for Cal-OSHA provisions than for other statutes and regulations. Instead of simply restoring the pre-1971 state of affairs, under which statutes could be admitted to establish a presumption of negligence only when the requirements of Evidence Code section 669 were met, the original version of Assembly Bill No. 1127 would have provided an independent basis for admitting Cal-OSHA provisions whether or not these threshold criteria were met. The August 23 amendment cured that anomaly; consistent with the purpose articulated in an earlier bill summary, it effectively reextended to Cal-OSHA provisions the 'usual rule of admissibility of statutes and regulations in court proceedings.' (See Sen. Com. on Public Safety, Analysis of Assem. Bill No. 1127, as amended Aug. 16, 1999.) In doing so, the amendment also reextended the *limits* on admissibility, including the requirements that the exercise of due care be in issue, the statute actually

apply to the defendant, the injured party be a member of the class the statute was intended to protect, and the injury result from an occurrence the statute was designed to prevent. (Evid. Code, § 669, subd. (a)(1), (3), (4).)" (*Elsner, supra*, 34 Cal.4th at pp. 931–932.)

"The presumption of negligence created by Evidence Code section 669 concerns the *standard* of care, rather than the *duty* of care." (*Rosales v. City of Los Angeles* (2000) 82 Cal.App.4th 419, 430 [98 Cal.Rptr.2d 144].) In order for the presumption to be available, "either the courts or the Legislature must have created a duty of care." (*Ibid.*) "[A]n underlying claim of ordinary negligence must be viable before the presumption of negligence of Evidence Code section 669 can be employed. . . . '. . . [I]t is the tort of negligence, and not the violation of the statute itself, which entitles a plaintiff to recover civil damages.' " (*California Service Station etc. Assn. v. American Home Assurance Co.* (1998) 62 Cal.App.4th 1166, 1178 [73 Cal.Rptr.2d 182].)

Thus, in order for safety statutes to be admissible to support a presumption of negligence under the doctrine of negligence per se, Biosources must have owed a duty of care to Millard. We have already concluded, under *Privette* and its progeny, that it did not. Therefore, section 6304.5 has no application here.

Further, Millard's argument fails for an even more basic reason. As the court noted, he did not allege in his complaint that the doctrine of negligence per se applied to the facts of this case. "The burden of a defendant moving for summary judgment only requires that he or she negate plaintiff's theories of liability *as alleged in the complaint*. . . . ' ". . . The [papers] filed in response to a defendant's motion for summary judgment may not create issues outside the pleadings and are not a substitute for an amendment to the pleadings." ' " (*Tsemetzin v. Coast Federal Savings & Loan Assn.* (1997) 57 Cal.App.4th 1334, 1342 [67 Cal.Rptr.2d 726].) Because Millard failed to allege that he was entitled to rely on a presumption of negligence under a theory of negligence per se and did not ask permission to amend his complaint to do so in response to Biosources's motion for summary judgment (see *Honig v. Financial Corp. of America* (1992) 6 Cal.App.4th 960, 965 [7 Cal.Rptr.2d 922]), amended section 6304.5 has no application here and the court properly granted Biosources's motion for summary judgment.[2]

---

[2] In its ruling the court noted that Millard's complaint "does not allege a cause of action for negligence per se." However, the doctrine of negligence per se is not a separate cause of action, but creates an evidentiary presumption that affects the standard of care in a cause of action for negligence. (*Quiroz v. Seventh Ave. Center* (2006) 140 Cal.App.4th 1256, 1285–1286 [45 Cal.Rptr.3d 222].) As stated, *ante*, there still must be a valid underlying cause of action for negligence for the doctrine to apply. (*Id.* at p. 1285.)

## DISPOSITION

The judgment is affirmed.

McDonald, J., and McIntyre, J., concurred.