Filed 11/14/22  Butler v. Fernandes CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| REBECCA SUE BUTLER, | B311974 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. 19STCV20840) |
| v. | |
| VEEDA FERNANDES et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Rafael A. Ongkeko, Judge.  Reversed and remanded with directions.

Campbell & Farahani, Frances M. Campbell and Nima Farahani for Plaintiff and Appellant.

Demler, Armstrong & Rowland, David A. Ring, Pennie P. Liu and David W. Jennings for Defendants and Respondents.

_____

Rebecca Sue Butler leased an apartment in a three-unit building in Santa Monica owned by Regina E. Fernandes as trustee of the Fernandes Trust, dated October 27, 2014. After several years Butler began having difficulties with her neighbor Joachim (Joe) Fernandes, one of Regina's adult children,[1] which purportedly culminated in Joe's attempt to hit Butler and her boyfriend with his car. Butler moved out. Regina died. Butler sued Joe, three of Regina's other adult children (Austin, Veeda and Shyla), as well as Doe 1 in his or her capacity as the successor trustee of the trust, alleging causes of action for violation of the Ralph Civil Rights Act of 1976 (Ralph Act) (Civ. Code, § 51.7), sexual harassment (Civ. Code, § 51.9), violation of the Santa Monica Tenant Harassment Ordinance (Santa Monica Mun. Code, § 4.56 et seq.) and negligence.

Butler appeals the judgment entered in favor of Austin, Veeda and Shyla (collectively siblings) after the trial court granted their motion for summary judgment. Although Butler failed to plead viable causes of action against the siblings for violating the Ralph Act, sexual harassment or violation of the Santa Monica ordinance, because she properly pleaded a negligence cause of action and there are triable issues of material fact as to that claim, we reverse the judgment and remand the cause for further proceedings.

---

[1]	We refer to the members of the Fernandes family, who share the same surname, by their first names for clarity.

2

## FACTUAL AND PROCEDURAL BACKGROUND

1. *Butler's Tenancy and Her Escalating Troubles with Joe*

In May 2013 Butler leased a unit in an apartment building on Yale Street in Santa Monica that Regina owned, first individually and later in her capacity as the sole trustee of the Fernandes Trust, dated October 27, 2014.[2] Butler never met Regina.

Joe lived in the adjacent unit and provided on-site managerial assistance at the building. Joe initially showed Butler the apartment, instructed her to fill out a credit application, signed the lease in his mother's name and provided her keys upon move-in. Butler contended Veeda, Austin, and Shyla also assisted in managing the property to varying degrees in Regina's absence.[3]

---

[2] The parties disputed in the trial court when the apartment building became part of the Fernandes Trust estate. Butler asserted the change in ownership occurred in October 2014 when Regina executed the trust instrument and listed the building in the schedule of trust assets. The siblings argued the transfer did not occur until February 2019 when Regina executed a trust transfer deed, which was recorded posthumously in June 2019. On appeal the siblings do not contend the building was not a trust asset as of late 2014.

[3] Regina traveled abroad from March 2017 to October 2018 and fell ill upon her return. She was in and out of hospitals and skilled nursing facilities from January to April 2019. According to Butler, Austin was responsible for marketing apartments for rent, offered some assistance with repairs and apologized to Butler on Joe's behalf for turning off her water. Veeda corresponded with Butler regarding maintenance issues and returned her last month's rent check. Butler spoke with Shyla

Butler testified at her deposition that her relationship with Joe was always "kind of abnormal," but during the first few years of her tenancy she did not interact with him often. However, on one occasion shortly after she moved in, Joe beat on Butler's door and berated her for parking in his spot although the building did not have assigned parking.

Beginning in 2017 Joe's conduct toward Butler became increasingly erratic and unpleasant. The change coincided with Butler's boyfriend, Daniel Morgan, spending more time at her apartment. Morgan eventually moved in with Butler.

In her complaint and at her deposition Butler gave examples of disturbing behavior she attributed to Joe. In May 2017, for example, handymen began showing up unannounced at Butler's apartment to make repairs; one worker told Butler that Joe, who Butler asserted had keys to her apartment, had let him into her unit on previous occasions. Butler also began to notice her belongings had been moved around her apartment when she was not there. She also suspected Joe was responsible for taking her underwear from the building's laundry room.

One night in October 2017 Joe started loudly throwing away glass bottles in the trash can outside Butler's window. Morgan asked Joe to be quiet, to which Joe replied, "Fuck you, asshole. I'm taking out garbage." A day or so later Butler found laundry detergent she had left in the building's laundry room had been contaminated with urine. In another instance, when Morgan and Butler were engaged in sexual relations, Joe went outside and repeatedly banged on the garbage can lid, screaming

once when she was locked out of her apartment; Shyla did not have a key and could not help.

4

that they "needed to shut the fuck up." Other times, Morgan heard sounds of "auto-erotic pleasure" or "violent masturbation" coming from Joe's apartment.

According to Morgan, Joe would leer at Butler when she walked by. He set up a folding chair at the base of her stairs to watch her and other times would open his apartment door or peer through the window as she passed. Morgan also testified at his deposition that Joe told him nobody wanted him at the building, he just needed to get out, and he was a freeloader.

In September 2018, while Butler was out of town, Joe turned off the water to her apartment when Morgan's brother was in the shower. When Morgan knocked on Joe's door, Joe responded, "What do you want? I'll call the cops. F you. F off." Morgan asked Joe to turn the water back on, to which Joe replied, "Okay, so long as you f off." However, the faucet for the bathroom sink still did not work properly following the shut-off. Austin apologized to Butler on Joe's behalf for the incident. Butler informed Veeda of the episode; Veeda replied Morgan should not be making noise in the apartment and nothing could be done because Morgan was not on the lease.

In January 2019 Butler and Morgan were walking back to her apartment through an alleyway when Joe accelerated his car toward them at a high rate of speed, causing Butler and Morgan "to have to jump out of the way" and "hug the wall." They "[j]ust barely" missed being struck by Joe's car. After Joe sped past, he slammed on the brakes and emerged from his car irate, gesticulating and screaming that Butler needed to control her boyfriend. Butler reported the incident to the police. Shortly thereafter Joe positioned the building's garage bins to block Butler's access to the exits.

On February 1, 2019 Joe appeared at Butler's door, along with four Santa Monica police officers, to deliver a notice stating she was in violation of her lease and demanding Morgan vacate the apartment.

On February 14, 2019 Butler obtained a temporary restraining order against Joe. However, she was never able to successfully serve him.

On February 28, 2019 Butler notified Regina by certified mail that she was terminating her tenancy. Butler stated she has not been staying at the apartment since February 14 "[d]ue to on-going and the more recent escalation of affairs involving Joachim Fernandes in Unit B." Butler also wrote, "I do not feel safe remaining in my apartment and I am unable to continue my tenancy so long as he also remains on premises."

On March 1, 2019 Butler sent a text message to Veeda stating she had sent her 30-day notice letter and could no longer communicate with Veeda "without documentation." Butler advised Veeda she had a restraining order against Joe. Butler also wrote, if Veeda did not respond in writing or by "recorded convo," Butler would "assume [she was] aiding him in his attempts to harass[her]." Butler's message continued, "If you don't know about any of this you should speak with Joe. I don't know if he has told you about what has been going on but he is engaging in criminal activity. I am afraid for my safety. I would greatly appreciate if you can help keep him away from me so I can leave. I just want to leave. Please understand. He is ruining my life." The next day, March 2, 2019, Butler sent Veeda a text message stating, "I saw you – please leave me alone[.]"[4] The

---

[4] Butler explained in her deposition that she saw Veeda drive by the building "a few times" around the time Butler was

6

following evening Veeda responded with a text message that read, "According to the lease agreement I need to refund your last month's rent of $1400. Please let me know the address or PO Box where you want me to send the check."

Butler moved out of the apartment in March 2019 because she was "no longer able to bear the behavior of [Joe]," and feared "for her safety if she continued to live" in the building.

Regina passed away in April 2019.

2. *Butler's Lawsuit*

On June 14, 2019 Butler filed a complaint for damages for violation of the Ralph Act, sexual harassment, violation of the Santa Monica Tenant Harassment Ordinance and negligence. Butler named as defendants Joe, Veeda, Austin, Shyla, Doe 1 as successor trustee, and nine additional Doe defendants.

Butler alleged on information and belief that Regina, until her death in April 2019, was the owner of the apartment building and the trustee of the Fernandes Trust, which held the building for the beneficiaries of the trust. Butler further alleged, "[b]ecause Plaintiff has no knowledge of the specifics of the trust, she sues Doe 1 in his or her capacity as the successor trustee of the Fernandes Trust" and, on information and belief, he or she "is doing business as an owner or manager of rental housing." Butler also alleged, again on information and belief, that Joe and the siblings "are beneficiaries of the Fernandes Trust . . . or otherwise have some ownership interest in the Building," and that they "all managed the Building during the time that Rebecca

_____

moving out. At one point Veeda stopped and picked up a package on Joe's doorstep. Butler believed Veeda was helping Joe avoid service of the temporary restraining order.

Butler lived in the Apartment." In addition, Butler alleged "each of the Defendants designated as a Doe is a parent, family member, predecessor, successor, affiliate, limited or general partner, agent, servant, associate, or employee of the other Defendants, and each is responsible in some manner for the acts and events alleged herein."

As for actionable misconduct Butler alleged Joe had violated the Ralph Act and Civil Code section 51.9 by intentionally threatening violence and intimidating her because of her sex and by sexually harassing her through "verbal, visual and physical conduct of a hostile nature." She alleged as to both statutory violations that all the defendants had aided or conspired in the denial of her rights, including the right to be free from any violence, or intimidation by threat of violence, against her because of her sex. Finally, as to both causes of action, Butler averred that, "[a]s a result of [Joe's] conduct," she had suffered both economic and noneconomic damages.

In her cause of action for violation of the harassment ordinance, Butler alleged all defendants are landlords within the meaning of the Santa Monica Municipal Code, and each had violated the ordinance by "[i]nterrupting, terminating or failing to provide housing services," "[f]ailing to perform repairs and maintenance," "[a]busing the right of access into the Apartment," "[a]busing the tenant with words which are offensive," "[i]nfluencing or attempting to influence [Butler] to vacate through intimidation or coercion," "[t]hreatening [Butler] with physical harm" and "[i]nterfering with [Butler's] right to quiet use and enjoyment for her Apartment."

8

For her negligence cause of action Butler alleged that all defendants "had a duty to act as reasonable landlords and to protect their tenants . . . and to remove any hazards and reasonably inspect the Building and correct defects" and each "had a duty to properly train and supervise their agents and employees who they entrusted with managerial duties." Butler further alleged, "Defendants failed to properly train and supervise their employees/agents entrusted with managerial duties at the Building."

3. *The Siblings' Motion for Summary Judgment or Summary Adjudication*

In October 2020 the siblings moved for summary judgment or, in the alternative, summary adjudication, contending each of Butler's four causes of action failed as a matter of law. In support of the motion the siblings emphasized Butler's complaint focused on Joe's actions; it was undisputed they had never engaged in or threatened violence toward Butler and had not sexually harassed her; and there was no evidence they had aided or abetted Joe's misconduct or conspired with him to commit it. Indeed, they asserted, it was undisputed that they did not learn of Joe's alleged misconduct, if at all, until after it had occurred.

The siblings also argued they were not Butler's landlord and had no ownership interest in the building during her tenancy and there was no agency or employment relationship between Joe, on the one hand, and the siblings, on the other, during that time. As such, they had no duty to control Joe or to protect Butler from Joe's actions.

On February 9, 2021, the same day she filed her opposition to the siblings' motion, Butler filed four separate amendments to her complaint, correcting the identification of Joe, Veeda, Austin

and Shyla to name each of them "individually and as trustee of the Fernandes Trust dated October 27, 2014." The court approved and signed the amendments.

In her opposition to the motion Butler admitted the siblings had never engaged in or threatened violence toward her and never sexually harassed her. Butler also acknowledged the siblings were not aware of Joe's alleged misconduct, if at all, until after it had occurred. However for the first time Butler asserted that, "for the entire length of [Butler's] tenancy, the four Fernandes siblings were either *de facto* or *de jure* trustee[s] of the Trust, and each is therefore liable just as if each Fernandes sibling owned the Property in fee simple in his or her own name." Butler further argued her claims under the Ralph Act and Civil Code section 51.9—predicated on Joe's attempt to hit Butler and Morgan with his car and his "campaign of bizarre sexual harassment"—were not against the siblings "personally," but "on the basis of vicarious liability for the actions of their agent." As such, Butler contended, it was immaterial the siblings were not aware of or did not participate in or contribute to Joe's wrongful acts.

Butler also explained the siblings' liability for violation of the Santa Monica harassment ordinance and for negligence was based on their status as Butler's landlords. Specifically with respect to negligence, Butler argued her claim was predicated on their responsibility for failing to properly train and supervise Joe, their agent, in their capacities as landlords.

4. *The Trial Court's Ruling*

On March 1, 2021, following receipt of a reply brief and a hearing on the motion, the trial court issued a written ruling granting the motion. The court found no triable issue of material

fact with respect to the siblings' "direct liability under any cause of action or [for] aiding or abetting in the commission of the underlying misconduct. If any individual has any direct liability, non-moving defendant [Joe] is potentially liable in his individual capacity as well as a successor or interim trustee of the Fernandes Trust during the times when he had the purported authority to act in his mother's absence, as provided in the trust instrument. . . . Further, [the siblings], whether in their individual or trustee capacities, are not vicariously liable for their co-trustee's misconduct because Joe Fernandes was not their agent, but, at best, only a co-trustee in their mother's absence."

The court entered judgment in favor of the siblings. Butler filed a timely notice of appeal.

## DISCUSSION

### 1. *Standard of Review*

A motion for summary judgment is properly granted only when "all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Code Civ. Proc., § 437c, subd. (c).) We review a grant of summary judgment de novo (*Samara v. Matar* (2018) 5 Cal.5th 322, 338) and, viewing the evidence in the light most favorable to the nonmoving party (*Regents of University of California v. Superior Court* (2018) 4 Cal.5th 607, 618), decide independently whether the facts not subject to triable dispute warrant judgment for the moving party as a matter of law. (*Hampton v. County of San Diego* (2015) 62 Cal.4th 340, 347; *Schachter v. Citigroup, Inc.* (2009) 47 Cal.4th 610, 618.)

11

"There is a triable issue of material fact if, and only if, the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof" at trial. (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850; accord, *Lugtu v. California Highway Patrol* (2001) 26 Cal.4th 703, 722.)

"'[T]he scope of the issues to be properly addressed in [a] summary judgment motion' is generally 'limited to the claims framed by the pleadings. [Citation.] A moving party seeking summary judgment or adjudication is not required to go beyond the allegations of the pleading, with respect to new theories that could have been pled, but for which no motion to amend or supplement the pleading was brought, prior to the hearing on the dispositive motion.'" (*Jacobs v. Coldwell Banker Residential Brokerage Co.* (2017) 14 Cal.App.5th 438, 444; accord, *Comunidad en Accion v. Los Angeles City Council* (2013) 219 Cal.App.4th 1116, 1125 ["'"[a] party cannot successfully resist summary judgment on a theory not pleaded"'"]; *Hutton v. Fidelity National Title Co.* (2013) 213 Cal.App.4th 486, 493 ["The pleadings play a key role in a summary judgment motion. '"The function of the pleadings in a motion for summary judgment is to delimit the scope of the issues . . ."' and to frame 'the outer measure of materiality in a summary judgment proceeding'"]; see *Conroy v. Regents of University of California* (2009) 45 Cal.4th 1244, 1250 ["[t]he materiality of a disputed fact is measured by the pleadings [citations], which 'set the boundaries of the issues to be resolved at summary judgment'"].)

2. *The Trial Court Properly Granted the Siblings' Motion on Butler's Causes of Action for Violations of the Ralph Act and Civil Code Section 51.9*

The Legislature enacted the Ralph Act "'to declare unlawful, and civilly actionable, any *acts of violence or intimidation by threats of violence* directed against any individual because of his actual or perceived membership in a minority or similarly protected class.'" (*D.C. v. Harvard-Westlake School* (2009) 176 Cal.App.4th 836, 858; see *Gabrielle A. v. County of Orange* (2017) 10 Cal.App.5th 1268, 1290 ["[t]he Ralph Act is an antidiscrimination scheme"].) A plaintiff's "sex" and "marital status" are among the protected characteristics. (See Civ. Code, § 51.7, subd. (b)(1), incorporating the characteristics listed or defined in section 51, subdivisions (b) & (e), the Unruh Civil Rights Act.) A plaintiff may establish a violation of the Ralph Act by proving the defendant directly engaged in prohibited conduct or "the defendant aided, incited, or conspired in the denial of a protected right." (*Gabrielle A.*, at p. 1291.)

Civil Code section 51.9 "prohibits sexual harassment in certain business relationships." (*Hughes v. Pair* (2009) 46 Cal.4th 1035, 1039, 1044 [the statute was enacted "to address 'relationships between providers of professional services and their clients'"].) The statute's nonexhaustive list of covered service providers includes a "[l]andlord or property manager" (Civ. Code, § 51.9, subd. (a)(1)((D)); and it creates liability for any of those individuals who engage in "verbal, visual, or physical conduct of a sexual nature or of a hostile nature based on gender, that were unwelcome and pervasive or severe." (Civ. Code, § 51.9, subd. (a)(2).) In other words, section 51.9 "expressly provides a cause of action for a tenant whose landlord sexually

harasses him or her." (*Smith v. BP Lubricants USA Inc.* (2021) 64 Cal.App.5th 138, 150.)

In her complaint Butler alleged Joe directly engaged in conduct proscribed by both the Ralph Act and Civil Code section 51.9. As to the siblings, in contrast, Butler alleged in her pleading only that they "aided or conspired in the denial of the rights provided to [Butler]." Butler, however, failed to present any facts to support this theory of liability, admitting that, to the extent the siblings ever learned about Joe's actions toward Butler, it was well after the challenged conduct had taken place. Rather, in opposing the siblings' motion, Butler presented a new theory of vicarious liability—the siblings were actual (de jure) or de facto trustees of the Fernandes Trust, responsible for Joe's conduct as their agent.

Butler's effort to expand her theories of liability against the siblings, although understandable, was improper in the absence of necessary court-approved amendments to her complaint. As discussed, the complaint limits the issues to be addressed in a motion for summary judgment. "'The burden of a defendant moving for summary judgment only requires that he or she negate plaintiff's theories of liability *as alleged in the complaint*. . . . "'. . . The [papers] filed in response to a defendant's motion for summary judgment may not create issues outside the pleadings and are not a substitute for an amendment to the pleadings."'" (*Millard v. Biosources, Inc.* (2007) 156 Cal.App.4th 1338, 1353; see *Laabs v. City of Victorville* (2008) 163 Cal.App.4th 1242, 1258 (*Laabs*) ["[t]o allow a party to expand its pleadings by way of opposition papers creates . . . an unwieldly process"].)

To be sure, "new factual issues presented in opposition to a motion for summary judgment should be considered if the controlling pleading, construed broadly, encompasses them.  In making this determination, courts look to whether the new factual issues present different theories of recovery or rest on a fundamentally different factual basis." (*Laabs, supra*, 163 Cal.App.4th at p. 1257.)  However, "if a plaintiff wishes to introduce issues not encompassed in the original pleadings, the plaintiff must seek leave to amend the complaint at or prior to the hearing on the motion for summary judgment." (*Ibid.*; accord, *Distefano v. Forester* (2001) 85 Cal.App.4th 1249, 1264-1265 ["[i]f the opposing party's evidence would show some factual assertion, legal theory, defense or claim not yet pleaded, that party should seek leave to amend the pleadings before the hearing on the summary judgment motion"].)  Butler's new theory of vicarious liability falls outside the permissible scope of new factual issues.

The requirement for pleading liability under a theory of respondeat superior is not onerous:  "It is a generally accepted rule . . . that 'In order to state a cause of action against defendant for a wrong committed by his servant, the ultimate fact necessary to be alleged is that the wrongful act was in legal effect committed by defendant.  This may be alleged either by alleging that defendant by his servant committed the act, or, without noticing the servant, by alleging that defendant committed the act.'" (*Golceff v. Sugarman* (1950) 36 Cal.2d 152, 154; accord, *CRST, Inc. v. Superior Court* (2017) 11 Cal.App.5th 1255, 1264, fn. 7; see also *Alvarez v. Felker Mfg. Co.* (1964) 230 Cal.App.2d 987, 997 ["It is the rule in California . . . that in order to hold the principal liable for the acts of his agent[,] it is not necessary to allege that the agent was negligent.  It suffices to allege that the

principal was negligent"].) Yet Butler's complaint failed to satisfy even that minimal requirement. She alleged actionable misconduct against the agent, Joe, and his aiders and conspirators, without the additional, essential allegation that the siblings, as landlords, were legally responsible for his malfeasance.[5] Nowhere in the complaint did Butler allege Regina or the siblings—in their individual capacity or as successor trustees—were vicariously liable, or legally responsible, for Joe's misconduct. Simply changing the capacity in which the siblings were sued by amendment to the complaint did not inject the otherwise-absent theory of vicarious liability into her pleading.

In sum, the unpleaded theory of vicarious liability was not a proper ground upon which to oppose summary judgment. (*Vulk v. State Farm General Ins. Co.* (2021) 69 Cal.App.5th 243, 258 ["[defendant] was not required to refute liability on a theory of liability raised by [plaintiff] for the first time in his opposition to the motion for summary judgment, and the trial court did not need to address the theory in ruling on the motion"]; *Laabs, supra*, 163 Cal.App.4th at p. 1253 [in opposing a motion for summary judgment, "'the plaintiff cannot bring up new, unpleaded issues in his or her opposing papers'"]; see *Millard v. Biosources, Inc., supra*, 156 Cal.App.4th at p. 1353 [plaintiff's

---

[5] It may have been Butler's intent to plead a theory of vicarious liability when she named Doe 1 as successor trustee of the Fernandes Trust or included the multitude of possible relationships for the other nine Doe defendants. But such generalized allegations of secondary liability are properly disregarded as "egregious examples of generic boilerplate." (*Moore v. Regents of University of California* (1990) 51 Cal.3d 120, 134, fn. 12.)

16

failure to allege theory of negligence per se in complaint precluded reliance thereupon to oppose summary judgment].) It is equally improper on appeal. (See *Vulk*, at p. 263 [plaintiff "cannot obtain reversal of the trial court's summary judgment ruling" on a legal theory not alleged in the complaint].)

Butler also argues on appeal, as she did in opposition to the summary judgment motion, that the siblings became trustees of the Fernandes Trust during Butler's tenancy. Butler emphasizes the trust instrument provided, "If the office of trustee becomes vacant, by reason of death, incapacity, or any other reason, then Joachim . . . , Austin . . . , Shyla . . . , and Veeda . . ., or any one or all of them, as cotrustees, shall be successor trustees, with full power to continue the trust administration." Regina's travels abroad coupled with her ailing health, Butler asserted, prevented Regina from fulfilling her duties as trustee and, pursuant to the terms of the trust instrument, Joe and the siblings became successor trustees—and her landlords—sometime during her tenancy. Alternatively, Butler contends the siblings were de facto trustees to the extent Regina "was able to act as trustee and simply did not" during the operative period, based on the varying degrees to which the siblings assumed managerial or administrative responsibilities at the property. Thus, Butler insists, her alternate theories of actual or de facto trustees created at least a triable issue of fact as to whether the siblings were Butler's landlords during 2018 and 2019.

Even if Butler's allegations that Joe and the siblings were each "an owner or manager of rental housing" and "all managed the Building during the time that Rebecca Butler lived in the Apartment" is properly construed to include her theory the siblings were her landlord, Butler's complaint still lacked the

17

necessary allegation that the building's landlords were somehow responsible for Joe's purported campaign of sexual harassment and threats of violence. To reiterate, that fatal deficiency cannot be cured by contentions of vicarious liability first included in an opposition to the motion for summary judgment without a corresponding amendment to the complaint. Without a viable theory of direct liability and absent well-pleaded allegations of vicarious liability, the trial court properly granted the siblings' motion on the Ralph Act and Civil Code section 51.9 causes of action.

3. *The Trial Court Properly Granted the Siblings' Motion on the Cause of Action for Violation of the Santa Monica Harassment Ordinance*

Butler alleged the siblings, as well as Joe, were landlords as defined by Santa Monica Municipal Code section 4.56.010, subdivision (f), and they had violated the city's harassment ordinance by, among other things, "[i]nterrupting, terminating or failing to provide housing services required by law" and "[i]nterfering with [Butler's] right to quiet use and enjoyment of her Apartment." However, to be actionable under the ordinance, the proscribed conduct must have been undertaken "in bad faith," defined as "[a]n intent to vex, annoy, harass, provoke or injure another person." (Santa Monica Mun. Code, § 4.56.010, subd. (a).)

Butler did not allege in her complaint, and did not offer evidence in response to the siblings' motion, that Veeda, Austin or Shyla had mistreated Butler in bad faith in violation of the harassment ordinance. Butler does not contend otherwise on appeal. Rather, once again in opposition to the motion and on appeal Butler argues the siblings' liability derives from their status as her landlords (de jure or de facto), answerable for Joe's

18

misconduct as an agent or employee.  Butler's failure to amend her complaint to include allegations of respondeat superior liability dooms this cause of action, as well.

Tacitly conceding this omission, Butler contends granting the motion on the harassment ordinance cause of action was nevertheless improper because "it was reasonably contemplated by the Complaint that [Butler] was proceeding against both Joe the manager and whoever owned the apartment building as the employer of Joe the manager."  In support of this argument, Butler points to the complaint's identification of Doe 1 as the successor trustee of the Fernandes Trust and her later amendments to the complaint naming the siblings in their capacities as trustees.  Changing the capacity in which the siblings were sued, however, without adding the requisite allegations of secondary liability, did not place Butler's new theory of liability at issue in the summary judgment motion.  (See *Laabs*, *supra*, 163 Cal.App.4th at p. 1258; *Distefano v. Forester*, *supra*, 85 Cal.App.4th at pp. 1264-1265.)

4. *The Trial Court Erred in Granting the Siblings' Motion on the Negligence Cause of Action*

Unlike her unpleaded theory of vicarious liability, essential for the causes of action for violations of the Ralph Act, Civil Code section 51.9 and the Santa Monica harassment ordinance, Butler pleaded actionable misconduct directly attributable to the siblings for purposes of her negligence cause of action.  Butler alleged in her complaint that Joe and the siblings had "a duty to act as reasonable landlords and to protect their tenants at the Building, including [Butler], from harm" and "each of them had a duty to properly train and supervise their agents and employees who they entrusted with managerial duties at the Building."

19

Butler further alleged, "Defendants failed to properly train and supervise their employees/agents entrusted with managerial duties at the Building" and that failure to act as reasonable landlords proximately caused her damages.

Butler's failure-to-train-and-supervise allegations support direct liability for the building's owner—that is, whoever was trustee during Butler's tenancy. (See *Delfino v. Agilent Technologies, Inc.* (2006) 145 Cal.App.4th 790, 815 ["[l]iability for negligent supervision and/or retention of an employee is one of direct liability for negligence, not vicarious liability"].) Given the siblings' status (along with Joe) as successor trustees, Butler established triable issues of fact as to their direct liability in that capacity. (See Prob. Code, § 18004 ["[a] claim based on . . . a tort committed in the course of administration of the trust may be asserted against the trust by proceeding against the trustee in the trustee's representative capacity, whether or not the trustee is personally liable on the claim"]; *Stoltenberg v. Newman* (2009) 179 Cal.App.4th 287, 294 ["'[A] third person with a claim against the trust or the trustee may assert the claim against the trust by bringing an action against the trustee in the trustee's representative capacity. . . .' [¶] There is no meaningful distinction between the liability of the decedent trustee who committed a tort as trustee and the successor trustee in her capacity as trustee, except that the decedent trustee's estate might also be liable"].)[6]

---

[6]     The Fernandes Trust authorized the trustee to "[m]anage, control, improve, and maintain all real and personal trust property," and to "[e]mploy and discharge agents and employees, including . . . property managers." As such, oversight of

The trial court in granting the siblings' motion focused, as do the siblings on appeal, on their alleged status as actual or de facto cotrustees during Butler's tenancy, arguing one cotrustee cannot be held liable for another cotrustee's misconduct. (See Prob. Code, §§ 18001 ["[a] trustee is personally liable for obligations arising from ownership or control of trust property only if the trustee is personally at fault"], 18002 ["[a] trustee is personally liable for torts committed in the course of administration of the trust only if the trustee is personally at fault"]; *Blackmon v. Hale* (1970) 1 Cal.3d 548, 559 ["[a] trustee is not strictly liable for the wrongful acts of a cotrustee"].) Similarly, the siblings contend, even if there were evidence they (and not only Joe) acted as Regina's agents in managing the apartment building, one agent cannot be held liable for another agent's misconduct.

Whatever the validity of the trial court's and the siblings' analysis of the siblings' potential personal liability for Joe's alleged misconduct as cotrustees or fellow agents, broadly construed Butler's complaint also alleged Veeda, Austin and Shyla are liable as successor trustees (as is Joe in his capacity as one of the successor trustees) for their predecessor's negligent supervision and training of Joe in his capacity as agent for the building's owner. It is true, as the siblings observe, that Butler did not name Regina as a defendant and Butler's allegation of negligent training and supervision do not specifically refer to Regina. But the complaint alleged the duty to train and supervise was owed by the Fernandes Trust's trustee as

employees managing the building fell within the trustee's prescribed powers.

21

owner/landlord; Regina had died before the complaint was filed; Butler named Doe 1 as a successor trustee; and the pleading (as amended) also expressly identified the siblings as trustees. Liberally construing the complaint, as we must, Butler adequately pleaded a theory of negligent training and supervision of the building's manager for which the successor trustees may be liable in their capacity as trustees.

The record on this liability theory is sufficient to defeat a motion for summary adjudication. Indeed, the siblings do not dispute that Joe acted as Regina's agent with respect to the property, contending in their moving papers in the trial court, "Anything [Joe] did (e.g., signing the lease or providing notices), was done for disclosed principal Regina." They simply argue if they were cotrustees or coagents with Joe, they had no duty—and no potential liability to a third party—to train or supervise him.[7] But Regina as trustee, owner of the building and Butler's landlord had such a duty; and the siblings are responsible for any breach of that duty as the Fernandes Trust's successor trustees. (See *Phillips v. TLC Plumbing, Inc.* (2009) 172 Cal.App.4th 1133, 1140 ["'[a] principal who conducts an activity through an agent is subject to liability for harm to a third party caused by the agent's conduct if the harm was caused by the principal's negligence in selecting, training, retaining, supervising, or otherwise controlling the agent'"]; *Evan F. v. Hughson United Methodist*

---

[7]    If, as Butler contends, the siblings became trustees during her tenancy because Regina could not, or did not, exercise her authority as trustee, the siblings may also be directly liable as trustees (not simply as successor trustees) for the failure to train and supervise their agent, Joe.

*Church* (1992) 8 Cal.App.4th 828, 836 [same]; see also Rest.3d Agency, § 7.05.)

The siblings presented no evidence that Regina had fulfilled her duty of training and supervising her agent, Joe. Accordingly, the burden never shifted to Butler to demonstrate there existed a triable issue of material fact as to her negligence cause of action. (See *Ennabe v. Manosa* (2014) 58 Cal.4th 697, 705 ["[t]he moving party bears the burden of showing the court that the plaintiff has not established, and cannot reasonably expect to establish, the elements of his or her cause of action" (internal quotation marks omitted)]; *Kahn v. East Side Union High School Dist.* (2003) 31 Cal.4th 990, 1003 ["the defendant must present evidence that would preclude a reasonable trier of fact from finding that it was more likely than not that the material fact was true [citation], or the defendant must establish that an element of the claim cannot be established, by presenting evidence that the plaintiff 'does not possess and cannot reasonably obtain, needed evidence'"].) The siblings' motion directed to that cause of action should have been denied.

## DISPOSITION

The judgment is reversed. The cause is remanded with directions to enter a new order granting the siblings' motion for summary adjudication on the first (Ralph Act), second (Civ. Code, § 51.9) and third (harassment ordinance) causes of action, denying the motion as to the fourth (negligence) cause of action and for further proceedings not inconsistent with this opinion.

The parties are to bear their own costs on appeal.

PERLUSS, P.J.

We concur:

SEGAL, J.        FEUER, J.